DIETZ, Judge.
 

 *444
 
 The North Carolina Department of Revenue has an employment policy that many North Carolinians no doubt view as perfectly reasonable: employees working at the agency-which is responsible for administering the tax laws and collecting state taxes-must comply with the tax laws themselves or risk immediate dismissal.
 

 Petitioner Wanda Renfrow is a long-time employee of the Department of Revenue. In 2011, the Department audited Renfrow's tax returns from 2008 to 2010 and discovered a number of unsupported itemized deductions. In March 2012, Renfrow acknowledged the errors, which she maintained were unintentional, and entered into a payment plan to address her accrued tax liability.
 

 Had the Department of Revenue promptly taken disciplinary action at that time, this may have been a very different case. But the Department failed to do so. More than nineteen months passed before Renfrow's division director first informed her that the agency would recommend she be dismissed for unacceptable personal conduct based on her tax filing errors. Renfrow resigned under threat of dismissal and ultimately filed a grievance with the Office of Administrative Hearings alleging that her resignation was involuntary and compelled by the threat of dismissal, and that the Department lacked just cause to dismiss her.
 

 As explained in more detail below, we affirm the Office of Administrative Hearings' final decision. The Department of Revenue could dismiss Renfrow only if her tax errors were "a current incident of unacceptable personal conduct." 25 N.C. Admin. Code 1J.0608. There is no bright-line rule defining what is a "current incident" but, in this case, the Office of Administrative Hearings properly concluded that the Department's nineteen-month delay in taking any action against Renfrow rendered her tax filing errors no longer current. Accordingly, we affirm the final decision of the Office of Administrative Hearings.
 

 Facts and Procedural History
 

 The North Carolina Department of Revenue employed Petitioner Wanda Renfrow for almost 25 years. Renfrow worked as a Returns Processing Supervisor in a division that processed tax payments.
 

 *445
 
 Because of the role the Department of Revenue plays in the collection and processing of state taxes, the Department has a strict policy for its employees that requires full compliance with all tax laws. The policy states that failure to comply with the tax laws will result in disciplinary action including possible dismissal.
 

 In September 2011, the Department of Revenue audited Renfrow's 2008 to 2010 tax filings. That audit concluded that Renfrow had no documentation to support several itemized deductions in those tax years. As a result of this audit, Renfrow owed the State $7,107.00.
 

 On 29 February 2012, the Department issued a notice of assessment against Renfrow for the unpaid tax liability. On 23 March 2012, after meeting with her division director to discuss the erroneous tax returns, Renfrow agreed to a payment plan.
 

 More than nineteen months later, on 5 November 2013, Renfrow's then-acting division director met with her and informed her that the Department of Revenue would recommend that she be dismissed for unacceptable personal conduct based on "violation of the Department's tax compliance policy." In
 
 *381
 
 the nineteen months between the meeting with her supervisor and entry into the payment plan, and the later meeting with the division director, no one at the Department of Revenue discussed the tax violations with Renfrow or indicated that she would be disciplined for those tax errors.
 

 On 12 November 2013, at Renfrow's pre-disciplinary conference, Renfrow submitted evidence supporting her position. She also submitted a letter and note addressing her desire to resign rather than be dismissed for cause. The letter stated, "I do not want to be dismissed from my job. I intend to go through the internal review of the decision ... Before any decision to dismiss me becomes final, I would like the opportunity to have my records reflect that I retired rather than I was dismissed."
 

 The note, which appears to have been submitted as a follow-up to the letter, stated, "[i]f the agency is not going to reinstate my employment with the Department ... I'am [sic] turning in my letter of retirement from Returns Processing Supervisor effective December 1, 2013."
 

 Following this meeting, the Department decided to follow its previous recommendation to terminate Renfrow. On 13 November 2013, the Department informed Renfrow that, "[w]e are accepting your resignation of retirement effective December 1, 2013 ... Per your request we have stopped any further disciplinary action."
 

 *446
 
 The next day, Renfrow responded with a letter stating that her retirement was "conditional and the triggering condition is a decision by you that you considered all other options and have made a determination to dismiss me":
 

 I received your letter today stating that "We are accepting your resignation of retirement effective December 1, 2013" and I want to be sure there is no misunderstanding here. In my November 13, 2013 letter to you, I stated that I do not want to be dismissed from my job and that I intend to go through the internal review of the decision. I further stated that "Before any decision to dismiss me becomes final, I would like the opportunity to have my records reflect that I retired rather than I was dismissed." My retirement is conditional and the triggering condition is a decision by you that you have considered all other options and have made a determination to dismiss me." As I stated in my letter, I love my job and I want to continue to work at the Department. Based on your letter, I can only conclude that you decided to dismiss me. If this conclusion is not correct, please advise me in writing I do not want to retire unless I absolutely have to in order to avoid dismissal.
 

 The Department of Revenue did not respond to this letter.
 

 On 20 December 2013, Renfrow filed a petition for a contested case hearing in the Office of Administrative Hearings arguing that her resignation was involuntary and that the Department did not have just cause to dismiss her.
 

 The Office of Administrative Hearings granted Renfrow's motion for summary judgment and entered a final decision ordering the Department of Revenue to reinstate Renfrow to her former position and provide her with back pay. The Department timely appealed.
 

 Analysis
 

 "In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record." N.C. Gen.Stat. § 150B-51. When, as here, a litigant appeals a final decision on grounds of errors of law we conduct a
 
 de novo
 
 review.
 
 Id.
 

 *447
 

 I. Subject Matter Jurisdiction
 

 The Department of Revenue first argues that the Office of Administrative Hearings lacked subject matter jurisdiction over Renfrow's contested case because Renfrow failed to file her petition within the time required by
 
 N.C. Gen. Stat. § 12638
 
 . We reject this argument because § 126-38 does not apply to this case. As the Department of Revenue concedes, the General Assembly repealed § 126-38 "effective August 21, 2013, and applicable to grievances filed on or after that date." Renfrow filed her contested case
 
 *382
 
 after 21 August 2013 therefore that statute does not apply.
 

 In its reply brief, the Department of Revenue asserts a new jurisdictional argument-that under N.C. Gen.Stat. § 126-34.01 (the statute that replaced § 12638), Renfrow "was required to first discuss the matter with the supervisor, and then follow the grievance procedure approved by the State Human Resource Commission." The agency does not explain why it believes Renfrow failed to comply with these statutory requirements; it simply asserts that "[s]he did not do so." Our review of the record reveals the opposite: Renfrow attended a pre-disciplinary conference with the acting director of her division before filing her contested case and ultimately obtained a final agency decision reviewed and approved by the Office of State Human Resources as required by the newly enacted grievance procedures. Accordingly, we reject this newly raised jurisdictional argument as well.
 

 II. Voluntariness of Resignation
 

 The Department of Revenue next argues that Renfrow could not pursue her just cause claim because she chose to resign rather than be dismissed. As explained below, because the Department did not have good cause to believe grounds for termination existed, Renfrow's resignation under threat of dismissal was, in effect, a dismissal.
 

 A state employee cannot pursue a claim for dismissal in the Office of Administrative Hearings unless the employee actually was dismissed. Thus, an employee who voluntarily resigns ordinarily cannot pursue a dismissal claim-after all, a dismissal, by its nature, is an "
 
 involuntary
 
 separation for cause." 25 N.C. Admin. Code 1J.0608 (emphasis added). But courts have held that where "the employer actually lacked good cause to believe that grounds for termination existed," a resignation under threat of dismissal is effectively the same as an involuntary dismissal.
 
 Stone v. Univ. of Md. Med. Sys. Corp.,
 

 855 F.2d 167
 
 , 174 (4th Cir.1988). This is a high bar because it does not require the employer to show that there actually were grounds to terminate the employee.
 

 *448
 
 Rather, the employer need only show that, at the time the decision was made, with the facts available to it, the employer had good cause to believe termination was appropriate. So long as this good cause exists, a resignation under threat of dismissal is not a dismissal because the resignation was voluntary.
 

 Here, despite the high bar described above, Renfrow has established that her resignation was involuntary because the Department lacked good cause to believe it could terminate her. The Department relied on a provision of the administrative code stating that an employee "may be dismissed for a
 
 current
 
 incident of unacceptable personal conduct, without any prior disciplinary action." 25 N.C. Admin. Code 1J.0608 (emphasis added). The Department of Revenue discovered Renfrow's tax filing errors on 22 February 2012.
 
 [1]
 
 The Department sent Renfrow a notice of her tax liability one week later. The following month, Renfrow agreed to a payment plan to repay her tax liability.
 

 Then,
 
 nineteen months
 
 passed before the Department of Revenue chose to pursue any disciplinary action. The Department argues that there should not be a fixed time period defining "current" incidents. It argues that "[r]ather than a length of time certain, allowing a reasonable time under the circumstances would seem more appropriate." We agree. But nineteen months was not reasonable.
 

 The Department has not provided any explanation for why it waited so long before pursuing disciplinary action. It argues that, in some cases, an employee accused of tax errors may want to challenge that finding in an administrative proceeding, forcing the Department to wait for the appeals process to end before disciplining the employee. But that did not happen here. Renfrow acknowledged the errors and entered into a payment plan within a month after the Department of Revenue alerted her to them; she did not appeal or otherwise challenge the agency's decision. Simply put, in the absence of
 
 any
 
 explanation for its nineteen-month delay, we hold that the Department did not have good cause to believe it could pursue disciplinary action under 25 N.C. Admin. Code 1J.0608
 
 *383
 
 because Renfrow's tax errors were no longer a "current incident." Accordingly, Renfrow's resignation was effectively an involuntary dismissal that was grievable through the administrative process.
 
 Stone,
 

 855 F.2d at 174
 
 .
 
 *449
 

 III. Just Cause for Dismissal
 

 Our conclusion that Renfrow's tax errors were no longer a "current incident" when the Department of Revenue first pursued disciplinary action provides grounds to affirm the decision of the Office of Administrative Hearings. Because the Department was not permitted to dismiss Renfrow for this alleged unacceptable personal conduct under 25 N.C. Admin. Code 1J.0608, it lacked just cause to do so. We affirm the Office of Administrative Hearings' decision on this basis and need not address the other grounds on which that decision is based.
 

 IV. Attorney's Fees Award
 

 Finally, the Department of Revenue challenges the Office of Administrative Hearings' award of attorney's fees to Renfrow. That award is based on an affidavit submitted by Renfrow in the proceeding below, detailing the time spent on this action. The Department did not challenge or respond to that affidavit in the Office of Administrative Hearings, although it had the opportunity to do so. We thus decline to consider these arguments because the Department failed to preserve them by raising them before the Office of Administrative Hearings.
 
 See
 

 Phillips v. Brackett,
 

 156 N.C.App. 76
 
 , 80,
 
 575 S.E.2d 805
 
 , 808 (2003) ;
 
 Gray v. North Carolina Dep't of Env't, Health & Nat. Res.,
 

 149 N.C.App. 374
 
 , 379,
 
 560 S.E.2d 394
 
 , 398 (2002).
 

 Conclusion
 

 For the reasons discussed above, we affirm the decision of the Office of Administrative Hearings.
 

 AFFIRMED.
 

 Judges McCULLOUGH and TYSON concur.
 

 [1]
 

 In cases like this one, where employee misconduct is not readily discoverable, whether the misconduct is a "current incident" depends on the amount of time that elapsed between the employer's discovery of the misconduct and the contested disciplinary action.